### LILLY LUMBER CO. v. SAVAGE et al.

(Circuit Court of Appeals, Fourth Circuit. February 1, 1921.)

No. 1842.

Brokers ⬛71—Contract by letter for commissions held binding, and not changed as to amount by subsequent letter.

Where plaintiffs, as agents, were authorized by letter to sell certain timber lands of defendant, the letter suggesting a maximum and minimum price to be asked, and expressly fixing plaintiffs' commission, a statement in a subsequent letter, definitely accepting an offer procured by plaintiffs at a price even higher than the maximum suggested, that in view of the terms of payment given the purchaser defendant was of "opinion" that plaintiffs should be satisfied with a smaller commission, to which plaintiffs promptly refused to agree, *held* not to have effected any change in the original contract for commissions, especially as defendant made no further objection until after the sale was finally closed, some two months later.

In Error to the District Court of the United States for the Western District of North Carolina, at Asheville; Edwin Y. Webb, Judge.

Action at law by C. W. Savage and W. A. Savage, partners as Savage Bros., against the Lilly Lumber Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

⬛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Thomas J. Hill, of Greensboro, N. C., and James G. Merrimon, of Asheville, N. C. (Dillard & Hill, of Murphy, N. C., and Merrimon, Adams & Johnston, of Asheville, N. C., on the brief), for plaintiff in error.

M. W. Bell, of Murphy, N. C., and Thomas S. Rollins, of Asheville, N. C. (Martin, Rollins & Wright, of Asheville, N. C., on the brief), for defendants in error.

Before KNAPP and WOODS, Circuit Judges, and WADDILL, District Judge.

KNAPP, Circuit Judge. Plaintiff in error, a West Virginia corporation, herein called defendant, owned a large tract of timber lands in Cherokee county, N. C., which Savage Bros., plaintiffs below, were employed to sell, and which was in fact sold through their agency. Dispute arose as to their commissions, and this suit was brought. The trial court directed a verdict in their favor, and defendant brings the case here on writ of error.

Aside from the testimony of one of the plaintiffs, all the evidence is in writing, consisting of letters and telegrams which passed between the parties. The correspondence of record begins in November, 1918, but nothing of importance appears until the 14th of December. On that date defendant wrote plaintiffs a letter in which the following is said:

"Now, we suggest a minimum price of $10 per acre, with your commission of 5 per cent. to be deducted, and a maximum price of $12 per acre, with the further understanding, that, in addition to the 5 per cent. commission, you are to receive 50 per cent. of the difference between the minimum and maximum price. As to terms, we would further agree with you in your letter of the 9th in the way of a suggestion; that is, giving an option for 12 or 18 months, or whatever terms may be agreed upon, and, as you advise, with the payment with said option of $15,000, and make such reasonable and easy terms as would be attractive to the purchaser, with the understanding and agreement, of course, that all money bear interest, and final payment to be made within a reasonable length of time, and at such times as would guarantee us no loss, leaving at all times double amount of timber in the way of security for any deferred payment, and, as you state, restricting the purchaser to cut on certain tracts, between certain creeks and branches, etc., until all the payments are made. A proposition similar to these suggestions could be agreed upon, if you find a party who means business."

It will be noted that this letter, whilst definite as to prices and commissions, is quite indefinite as to terms of payment. The general basis of an acceptable offer is outlined, and plaintiffs are authorized in effect to close with a proposition "similar to these suggestions."

The numerous letters afterwards exchanged, down to July, 1919, are without direct bearing on the matter in controversy. They indicate active efforts by plaintiffs to effect a sale of the property, and approval by defendant of what they were doing, and in none of them is there any intimation of a purpose or desire on defendant's part to reduce the commissions originally offered. On July 21st plaintiffs write a long letter about their negotiations with one Woodbury and a tentative offer made by him. After stating that they had asked $12.50 per acre, with 6 per cent. interest on deferred payments, they say:

"For your information, we have been talking with W. H. Woodbury about your Beaver Dam timber. Woodbury knows about what you have got. While he said he would want to go and look it over carefully before he did anything, we asked him $12.50 an acre for it, with 6 per cent. interest on deferred payments. He stated he didn't like that interest proposition, and wanted to know if you would make it $12.50 without interest, and pay $5,000 every six months until the property was paid for, or would you take $10 on the same terms, with interest at 6 per cent., being $5,000 every six months until the property is paid for."

And defendant is asked to write them—

"a nice letter that we can show Woodbury, * * * that you would like to sell it to him on such terms as he has offered, providing he would pay a price to justify you, with interest at 6 per cent."

Two days later defendant writes them a letter, which says in substance that the property is worth more, and had been held at a higher figure, but that the price might stand for a while at $12.50, provided the deferred payments bear interest at 6 per cent. Again it is to be noted that in this letter no objection is made to the terms proposed, namely, $5,000, every six months, nor is there any suggestion that the agreement of the previous December as to plaintiffs' commissions should be modified because of a smaller cash payment than was then in contemplation.

Under date of August 6th plaintiffs write that they have "agreed on a proposition with Mr. Woodbury" of $12.50 per acre, $5,000 down and $5,000 every six months, with 6 per cent. interest on all deferred payments, which are to be secured by a deed of trust on the property and a limitation upon the amount of timber that may be cut from time to time until the whole purchase price is paid. The letter further says that "this is subject to your acceptance," and that Woodbury also is to have the privilege of accepting or rejecting the proposition after looking over the timber. Request then is made that defendant send an extra copy of its answer, "so that Mr. Woodbury may have a copy and Savage Bros. a copy, and cover all the points fully named in our letter, as Mr. Woodbury has requested that we have you do that in the form of an agreement, so as to protect Mr. Woodbury while he is looking over the timber, and assuring him that he will get the timber after he goes to the expense of making a cruise, if it suits him." On the 20th of August answer was sent, to be delivered to Woodbury, saying that a meeting of defendant's stockholders had been held on the 16th, at which "it was ordered that this property be offered to you for sale to Mr. Woodbury at $12.50 per acre," on terms stated, which appear to be substantially, if not exactly, the terms proposed by him, as set forth in plaintiffs' letter of the 6th, and plaintiffs were authorized "to give Mr. Woodbury 20 days from this date to make up his mind." In the same envelope was another letter to plaintiffs, calling attention to the difference between the terms of payment mentioned in the letter of December 14, 1918, and the terms accepted from Woodbury, and saying, in view of this difference, that—

"myself as well as the board was of the opinion that if the sale was made in accordance with your letter that you should be satisfied with 5 per cent. commissions, to be paid proportionately out of each payment."

Plaintiffs promptly replied to the effect that they were entitled to and would insist upon the compensation agreed to in the original contract. The subsequent correspondence, extending over a period of two months or more, until the transaction was closed, throws no light on the subject of commissions. Woodbury in the meantime decided to take the property at the price and on the terms offered in defendant's letter of August 20th, and in October following deeds were executed to the Woodbury-Mauney Company of 8,859.12 acres of land for the consideration of $110,090.25. The cash payment of $5,000 and notes for balance, secured by deed of trust, were accepted by defendant.

It will thus be seen that the matter in dispute is whether plaintiffs are entitled to half the difference between $10 an acre and $12.50 an acre, in addition to 5 per cent. on the minimum price, or whether they are entitled to only 5 per cent. on the price actually realized. It will also be seen that defendant's denial of liability for half the excess is based wholly on its letter of August 20th, in which the opinion is expressed that plaintiffs should be satisfied with 5 per cent. commissions, "to be paid proportionately out of each payment." The original agreement for compensation is perfectly plain and nothing afterwards occurred to modify or change it, except what is said in this letter. Defendant got 50 cents an acre more for its land than the maximum price named in the December letter, and the fact that it accepted less favorable terms of payment did not of itself operate to deprive plaintiffs of the commissions then agreed to be paid.

For several reasons we are of opinion that the letter in question was without effect on the contract relations of the parties. In the first place, it appears that nearly a month before defendant had assented to the terms on which the land was afterwards sold to Woodbury. Those terms are fully and specifically stated in plaintiffs' letter of July 21st, and defendant's reply of the 23d authorized a sale in accordance therewith, and this without any suggestion that plaintiffs' commissions should be diminished by reason of the longer time allowed for payment. Therefore, as seems to us, plaintiffs were empowered to accept the offer of Woodbury, if definitely made, and to bind defendant by so doing. If that had happened, their right to commissions under the December contract would not have been doubtful; and we do not perceive that they are less entitled to the benefits of that contract because they stated in their letter of August 6th that Woodbury's proposal "is subject to your acceptance," since it was in fact accepted, and the sale made accordingly.

In the second place, it is evident that the "opinion" expressed by defendant that plaintiffs should be satisfied with 5 per cent. on the purchase price was not made a condition of the sale to Woodbury. Defendant was anxious to sell the property, and quite willing to accept Woodbury's offer, and its letter to plaintiff, for delivery to him, was in effect as well as in form an unconditional acceptance. Had defendant so intended, it could and should have refused to make the sale unless plaintiffs consented to take 5 per cent. commissions. But plainly that is not the import of its private letter to them of the same date. It

wanted the sale to go through, even if it had to pay the commissions originally offered, and it also wanted in that event to reduce the measure of its liability. In short, we regard this letter to plaintiffs as nothing more than a request that they forego their claim to half the excess above $10 an acre, because of the considerable period of time over which Woodbury's payments were extended. It was not put forward as a condition, and cannot be held to annul or modify the December agreement.

Moreover, taking the whole correspondence into account, we think that defendant should be deemed to have acquiesced in plaintiffs' refusal to accept 5 per cent. commissions. They immediately answered the letter to them, stating the opinion that they should be satisfied with the compensation, with a firm insistence that the December contract should be carried out, and saying at the close of their letter:

"We would thank you to advise us on receipt of this letter if you will still agree on your terms of commission as set out in your December letter, which terms have never been countermanded, and, in doing so, help us to encourage, rather than discourage, this Woodbury sale and any other sales we might make for you."

To this defendant made no reply until some time after Woodbury had agreed in writing to take the property and defendant had been so advised, which was about the 8th of September. In our judgment it was then too late for it to claim that the contract with plaintiffs was not binding. Its continued silence, while doubt remained as to what Woodbury would do, should charge it with acquiescence in plaintiffs' contention.

It follows, from the views thus briefly stated, that no defense to the suit was established, and the trial court was therefore right in directing a verdict for plaintiffs.

Affirmed.